# Valentine *v.* Planters' Bank.

An equity of redemption in personal property is not subject to seizure and sale under an execution at law.

This was a motion to dissolve an injunction on bill, answer, and exhibits.

HARRISON and HOLT for the motion.

A judgment for upwards of fourteen thousand dollars was obtained in the Warren circuit court by the Planters' Bank, against complainant, as the drawer of a promissory note, which judgment was subsequently affirmed, with damages, by the High Court of Errors and Appeals. The *fi. fa.* which issued on this judgment was levied on a number of slaves, as the property of complainant, and to arrest their sale by the sheriff this bill was filed. Two grounds are alleged why the sale should not proceed. First. That complainant tendered the sheriff lands, and desired him to levy on them, instead of the slaves, which he refused to do. Second. That the slaves are covered by mortgage, and therefore not subject to execution. Upon this meagre showing, the circuit judge granted the injunction now asked to be dissolved.

This motion might, it is believed, have been safely made on the face of the bill, barren as it is of all semblance of equity, so far as complainant is concerned; but to present its insufficiency in still stronger colors, a full answer, supported by exhibits, has been filed, and on them, and the bill, the motion is based.

In regard to the first ground, it is enough to say, that no principle of the common law, or statute of the state, authorizes a defendant to substitute real for personal property, as the subject matter on which an execution against him shall be levied. What property shall be seized, is left to the sound discretion of the officer to determine, subject only to this qualification, that when real

estate has been levied on, the defendant may release it, by the surrender of sufficient personal property; the very opposite of the position assumed by complainant in his bill. This is almost the last trace found lingering in our code of the anxiety of the common law to protect real estate from execution and sale, making the personalty primarily liable for debts, &c.

Even, however, if complainant's position were well grounded in the law, the allegations of the bill would not bring his case within reach of the principle. He does not state or pretend that he had any title to the lands which he offered to the sheriff; or if it could be inferred that he had title to the land, from the fact that he lived on one of the tracts, yet he does not aver or intimate that it is free from incumbrances, mortgages, deeds of trust, &c. and freely liable to the execution which he asked to have levied on it. If this were not the condition of the land, certainly, even if the law was as complainant supposes, it could not be pressed upon the sheriff in discharge of the slaves, and that such was its condition should appear by distinct allegation.

In regard to the second ground of equity, it must be observed, that complainant, by great disingenuousness and art, has concealed the fact, that the mortgage upon the slaves in favor of Webster, was given to secure the payment of the very note on which this judgment was rendered, and one other note, which the answer and exhibits show has been since paid. As a general rule, property conveyed in mortgage is not subject to execution. But it is equally true, that the party holding the mortgage debt may proceed, at his election, either in a court of law or chancery; or, indeed, as has been held, he may proceed in both courts at the same time. And when he obtains his judgment at law, he may levy upon and sell the mortgage property; because this proceeding does not interfere with, but is in enforcement and extinguishment of the mortgage. This constitutes a well known exception to the general rule. The answer avers, and the exhibits prove, that the slaves levied on are the same named in the mortgage to Webster.

The complainant somewhat indistinctly states that there is another mortgage or deed of trust on these slaves; when or to whom executed, or for what purpose, is not alleged. The answer avers, that if such incumbrance exists, it is of younger date than

the mortgage to Webster, and is, of course, no impediment to the sale about to be made by the sheriff. When the holder of a mortgage is proceeding in equity to foreclose, he ought to make junior incumbrancers, if known to him, parties; but this rule does not apply to a judgment creditor at law, selling in pursuance of his lien. It would, in any event, be for such junior incumbrancers, and not for Mark Valentine to complain.

As this injunction was obtained manifestly for delay, it is hoped that damages will be given in the event of a dissolution.

GEORGE S. YERGER, contra.

The bill and answer show that Valentine mortgaged certain slaves, to pay certain notes mentioned in the mortgage. One of these notes was assigned to the Planters' Bank, on which she obtained judgment at law and issued an execution thereon, which was levied on the slaves mentioned in the mortgage, to enjoin the sale of which this bill was filed.

1. It has been settled in this court repeatedly, that an equity of redemption in personal estate cannot be sold at law.

2. It has also been decided, that where no right or title would pass by a sale under execution, this court would enjoin it.

3. It makes no difference that the judgment was recovered on one of the notes mentioned in the mortgage. The same principle, to wit, that an equity of redemption in personalty cannot be sold, applies, whether the judgment was obtained on one of the notes secured by mortgage, or any other debt. Jackson *v.* Hall, 10 John. Rep. 481.

THE CHANCELLOR.

The complainant made his note for ten thousand dollars, to S. P. Webster, and gave a mortgage on a number of slaves to secure the payment thereof. The note was afterwards transferred to the Planters' Bank. The bank sued upon the note, and recovered a judgment at law, and sued out an execution of *fieri facias*, which was levied upon the slaves named in the mortgage made, for the security of the debt. The complainant obtained in vacation an injunction against the sale, which the defendant now moves to dissolve. The assignment of the note to the Planters' Bank car-

61*

ried with it the mortgage made to secure its payment, and consequently placed the bank and the complainant in the relation of mortgagor and mortgagee. I have repeatedly decided, that an equity of redemption in personal property is not subject to seizure and sale under an execution at law. The counsel for the defendant admit that this is the rule, but insist that it is not applicable to a case where the mortgage was made to secure the debt upon which the judgment was rendered It seems to me that the reason of the rule is much stronger in such case, than when applied against a third person as a judgment creditor of the mortgagor. There is no description of creditor whose remedy is so broad and comprehensive as that of a mortgagee. He may, according to the practice, proceed at the same time both at law and in equity; or he may sue at law and proceed against the general property of his debtor, and if that fails to satisfy his claim he may then come into this court to foreclose upon the mortgage property for any balance that may be due. I see no reason in favor of enlarging his remedy in the form here proposed, especially as its tendency would be to embarrass and oppress the mortgagor.

In the case of Atkins *v.* Sawyer, 1 Pick. Reports, 381, this very question underwent investigation. It was there held, that a mortgagee cannot, at law, enforce a sale of the equity of redemption, of the mortgagor, for the purpose of paying the debt secured by the mortgage. The same doctrine was held by the supreme court of Kentucky. Going's Executors *v.* Shreve, 7 Dana. Rep. 64. The reason of the rule is, to my mind, clear and convincing. The question is, shall the mortgagee be allowed to proceed at law to a judgment upon his debt, and then sell under that judgment the equity of redemption of his mortgagor? The very relation which the parties sustain, and the opposing interests which they respect. ively have in the subject of the mortgage, seem to forbid such a proceeding. To allow it would be to give to the mortgagee an undue control over the interests of the mortgagor. It not only may, but most usually would result in the sacrifice of the equity of redemption of the mortgagor, or at least in forcing him to a round of perplexing litigation, in order to protect his rights. The legal estate is vested in the mortgagee, and is supposed to be

Valentine *v.* Planters' Bank.

worth the debt which the mortgage was made to secure; the equitable estate remains with the mortgagor, and consists in the value of the thing mortgaged over and above the sum for which the mortgage was made. It is quite clear upon principle, that no form of forced sale by which the purchaser may obtain a complete title to the mortgage property, by simply paying for the equitable interest in it, should be tolerated. Suppose the purchaser should bid the exact amount of the mortgage debt, the mortgage would seem to be thus extinguished, at least in the hands of the mortgagee, and the purchaser would thus obtain a complete title to the property, when he had only bought and paid for the equity of redemption. And this, too, although the value of the property might greatly exceed the mortgage debt. In this state of things the mortgagor would seem to be without remedy, or at least a very embarrassing and doubtful one. But if the mortgagee should himself become the purchaser, having bid only the amount of his debt, the rights of the mortgagor would then encounter increased difficulty and embarrassment. In such case, the mortgagee would pay nothing for the equity of redemption, but would get the property merely for the amount for which it was mortgaged; and uniting in himself both the legal and equitable title, would place the mortgagor at defiance. In either case, therefore, the equity of redemption, if worth any thing, would be sacrificed. Chancellor Kent, in the case of Tice *v.* Annin, 2 John. Ch. 126, seems to have fully appreciated these difficulties, and has declared that the true remedy was to prevent such sales, by prohibiting the mortgagee from proceeding at law to sell the equity of redemption; and in that opinion I fully concur. The motion to dissolve the injunction must be overruled.